IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON HERBERT, | ) |
| | ) |
| Plaintiff, | ) 2:20-CV-1413-NR |
| | ) |
| v. | ) |
| | ) |
| KEVIN POUYA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**J. Nicholas Ranjan, United States District Judge**

Plaintiff Brandon Herbert, a.k.a. "Peanut," is a resident of Turtle Creek, Pennsylvania who designs tour merchandise for rap artists. Some of his prominent clients have included Mac Miller, Sir Michael Rocks, and, more recently, Defendant Kevin Pouya. In this lawsuit, Mr. Herbert alleges that he designed certain merchandise sold on several of Mr. Pouya's tours, that Mr. Pouya agreed via text message to pay him up to half of the proceeds related to those sales, and that Mr. Pouya subsequently refused to pay him anything despite earning hundreds of thousands of dollars selling Mr. Herbert's merchandise. Based on these allegations, Mr. Herbert asserts claims for breach of contract and unjust enrichment.

Now before the Court is Mr. Pouya's motion to dismiss that lawsuit, for three reasons. First, he argues that the Court lacks personal jurisdiction over him because he is not domiciled in Pennsylvania (he lives in Florida) and did not have any purposeful contact with Pennsylvania related to the alleged contract. Second, for similar reasons, Mr. Pouya argues that venue is improper in this District. And third, Mr. Pouya argues that Mr. Herbert's claims fail as a matter of law; that is, the claims should be dismissed because he fails to plead the "existence and essential terms of a contract," "neglects to plead any evidence of damages," fails to "adequately plead the

necessary elements of an unjust enrichment claim," and seeks certain types of damages (punitive damages, attorneys' fees, lost wages, and front pay) that he is not entitled to recover.

After careful consideration, the Court will deny Mr. Pouya's motion, except that the Court will grant his request to strike Mr. Herbert's demands for certain types of damages. As explained below, Mr. Herbert has presented sufficient evidence to establish that the Court has personal jurisdiction over Mr. Pouya in this case and, further, has adequately pled claims for breach of contract and unjust enrichment. However, the Court agrees with Mr. Pouya that punitive damages, lost wages, front pay, and attorneys' fees are unavailable to Mr. Herbert as a matter of law.

## LEGAL STANDARD

### I.  Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

A complaint may be dismissed under Rule 12(b)(2) for "lack of personal jurisdiction." In reviewing a motion to dismiss under Rule 12(b)(2), the Court is required to accept as true the allegations in the pleadings and all reasonable inferences therefrom. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, Rule 12(b)(2) "does not limit the scope of the court's review to the face of the pleadings." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556-57 (M.D. Pa. 2009) (citations omitted). Instead, "[c]onsideration of affidavits submitted by the parties is appropriate and, typically, necessary." *Id.* (citing *Patterson by Patterson v. FBI,* 893 F.2d 595, 603-04 (3d Cir. 1990)).

"Although plaintiffs bear the ultimate burden of proving personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the preliminary stages of litigation." *Id.* (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). "Rather, plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person." *Id.* (citation omitted). That said, once a defendant challenges the existence of personal jurisdiction, the

plaintiff may not "rely on the bare pleadings alone" to withstand the challenge, and must "respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604 (citation omitted). "When [a] plaintiff responds with affidavits or other evidence in support of its position, however, the court is bound to accept [those] representations and defer final determination as to the merits of the allegations until a pretrial hearing or the time of trial." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 557 (citations omitted).

## II. Rule 12(b)(3) motion to dismiss for improper venue.

A complaint may be dismissed under Rule 12(b)(3) for "improper venue." In deciding a motion to dismiss under Rule 12(b)(3), the Court must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citations omitted). However, if the Court "examines facts outside the complaint to determine venue," it still "must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *N. Am. Commc'ns, Inc. v. Herman*, No. 17-157, 2018 WL 581069, at *3 (W.D. Pa. Jan. 25, 2018) (Gibson, J.) (cleaned up).

## III. Rule 12(b)(6) motion to dismiss for failure to state a claim.

A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Yet "detailed pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Instead, the Federal Rules "demand only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (citation omitted). The defendant bears the burden of showing that no plausible claim exists. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

## DISCUSSION & ANALYSIS[1]

In his motion to dismiss, Mr. Pouya argues that the Court lacks personal jurisdiction over him, that venue is improper in this District, and that Mr. Herbert's claims are insufficiently pled, for various reasons. The Court will address these arguments in turn, beginning with the threshold jurisdictional issue.

### I. The Court has specific personal jurisdiction over Mr. Pouya.

To begin with, the Court has specific personal jurisdiction over Mr. Pouya. "A District Court typically exercises personal jurisdiction according to the law of the state where it sits, in this case Pennsylvania." *Cruickshank-Wallace v. CNA Fin. Corp.*, 769 F. App'x 77, 79 (3d Cir. 2019) (citation omitted). Pennsylvania's long-arm statute authorizes the exercise of jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). Thus, to determine whether personal jurisdiction exists, the Court asks "whether, under the Due Process Clause, the defendant has certain minimum contacts with [Pennsylvania] such that the maintenance of the suit does not offend

---

[1] The Court writes for the benefit of the parties, who are familiar with the allegations in the complaint and the record evidence relevant to Mr. Pouya's jurisdictional arguments. Accordingly, for the sake of brevity, the Court will dispense with any comprehensive recitation of the facts and instead reference allegations and evidence as relevant to the analysis below.

traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (cleaned up).

"Due process shields persons from the judgments of a forum with which they have established no substantial ties or relationship." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). "In order to be subject to personal jurisdiction, a defendant's conduct in connection with the forum state must be such that he may reasonably anticipate being haled into court there." *Id.* (cleaned up). Once challenged, "the burden rests upon the plaintiff to establish personal jurisdiction." *Id.* (citation omitted).

"Personal jurisdiction can be either general jurisdiction or specific jurisdiction." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (citations omitted). Here, neither party argues that Mr. Pouya is subject to general jurisdiction in Pennsylvania, so the Court focuses its analysis on whether specific jurisdiction exists. "Specific jurisdiction is established when a non-resident defendant has purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co.*, 270 F.3d at 150 (cleaned up).

As a baseline, "[m]erely entering into a contract with a resident of a forum is not always sufficient to establish personal jurisdiction over the defendant." *Penco Prod., Inc. v. WEC Mfg., LLC*, 974 F. Supp. 2d 740, 749 (E.D. Pa. 2013) (citation omitted). Instead, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Id.* (citation omitted). In performing that inquiry, courts must examine "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (citation omitted). That is, "courts consider whether the nonresident defendant solicited, negotiated, or executed

the contract in the forum state." *Penco Prod., Inc.*, 974 F. Supp. 2d at 750 (citations omitted). Also relevant is "whether the nonresident defendant knew or should have known that it was dealing with [a party] located in the forum state." *Id* (citation omitted). Finally, although not required, "courts in the Third Circuit often emphasize visits or some physical presence in the forum when finding specific personal jurisdiction." *Id.* (citations omitted); *see also Gen. Elec. Co.*, 270 F.3d at 150 ("Specific jurisdiction frequently depends on physical contacts with the forum. Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." (citation omitted)); *Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d 767, 773–74 (E.D. Pa. 2012) ("[P]hysical presence will generally enhance a party's contacts with the forum state[.]").

Measured against this framework, Mr. Pouya's contacts with Pennsylvania were sufficient to establish specific jurisdiction. Most importantly, Mr. Herbert has presented competent evidence that Mr. Pouya was physically located in Pennsylvania (and living with Mr. Herbert in Pennsylvania) at the time he allegedly texted his acceptance of the purported contract. ECF 23-1, ¶¶ 11-12. Mr. Herbert also presented evidence that he and Mr. Pouya discussed the issue of payment for Mr. Herbert's designs while the two were living together in Pittsburgh. *Id.* at ¶¶ 7-16. These contacts alone are sufficient, as even "[a] single visit by a defendant to the forum may provide the necessary minimum contacts … if the contract that forms the basis of the suit was negotiated during that visit." *Leone v. Cataldo*, 574 F. Supp. 2d 471, 478–79 (E.D. Pa. 2008) (cleaned up).

Mr. Herbert's allegations and evidence also support a reasonable inference that Mr. Pouya either "knew or should have known that [he] was dealing with [a party] located in the forum state." *Penco Prod., Inc.*, 974 F. Supp. 2d at 750 (citation omitted). That is, it is readily apparent that Mr. Pouya was aware Mr. Herbert lived

and worked in Pennsylvania (given that they lived together), and thus it is a reasonable inference that Mr. Pouya at least should have been aware that Mr. Herbert would perform any design work related to their agreement in Pennsylvania. This bolsters the Court's conclusion that Mr. Pouya "purposefully directed" his activities toward the Commonwealth—*i.e.,* that, while located in Pennsylvania, Mr. Pouya knowingly chose to enter into an agreement with a Pennsylvania resident regarding services performed in Pennsylvania. *Cf. Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) ("Most of the services performed by Remick on behalf of Manfredy were conducted at Remick's Philadelphia office, and Manfredy certainly should have expected as much as he knew that Remick's home office is in Philadelphia."); *Shafik v. Curran*, No. 09-2469, 2010 WL 2510194, at *4 (M.D. Pa. June 17, 2010) ("From the time Curran solicited Shafik's services through the duration of their relationship, Curran knew Shafik was a Pennsylvania resident, that Rockwood was based in Pennsylvania, and that Shafik worked out of an office in Pennsylvania.").

Viewed as a whole, these contacts are sufficient to establish that the Court has specific jurisdiction over Mr. Pouya.

In response, Mr. Pouya offers two species of objections, neither of which is availing. First, he makes several evidentiary arguments regarding the admissibility of the evidence Mr. Herbert has submitted. Specifically, he argues that Mr. Herbert's affidavit cannot be considered because it is not notarized and does not include an attestation "that he has personal knowledge of the facts included therein." Mr. Pouya also argues that the text messages submitted by Mr. Herbert are not properly authenticated under F.R.E. 901. Second, Mr. Pouya argues that the contacts with Pennsylvania established by Mr. Herbert's evidence are insufficient because they consist of a single text message exchange initiated by Mr. Herbert and, further,

because Mr. Pouya was not in Pennsylvania to conduct business with Mr. Herbert but, rather, to care for his ill girlfriend.

As to Mr. Pouya's evidentiary arguments, the Court finds that Mr. Herbert's affidavit is competent evidence that can be relied on to establish the relevant facts for purposes of this motion—including the existence and context of the text message exchange alleged by Mr. Herbert. "[W]hile an affidavit certainly *can* explicitly state that it is based on 'personal knowledge,' there is no requirement for a set of magic words." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005) (cleaned up) (emphasis in original). Instead, it is enough that the matters attested to would, in fact, be within the sphere of Mr. Herbert's own knowledge. *Cf. Bryant v. Bell Atl. Maryland, Inc.,* 288 F.3d 124, 135 n. 9 (4th Cir. 2002) ("Bell Atlantic's affidavits contain sufficient information, including a description of the affiants' job titles and duties, to establish that the affiants' statements were made based on personal knowledge."). Here, there can be little doubt that Mr. Herbert has personal knowledge of things such as whether Mr. Pouya was living with him at the time their conversations took place, where he understood Mr. Pouya to be at the time they exchanged the relevant text messages, and what the terms of that contract were.[2]

Mr. Pouya's notarization objection fares no better. Federal law allows for consideration of unsworn declarations to the same extent as notarized affidavits. *See* 28 U.S.C. § 1746; *Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 122 (3d Cir. 2011) ("Unsworn declarations are permissible at the summary judgment stage if they conform to 28 U.S.C. § 1746's requirement that declarants state that the contents of their declarations are true, subject to penalty of perjury." (citations omitted)). Here, Mr. Herbert's declaration attests that "the foregoing statements made by me are true"

---

[2] Because the Court can properly consider the contents of Mr. Herbert's affidavit, including his testimony that Mr. Pouya "agreed to my payment terms" during a "text message conversation," it is unnecessary to consider Mr. Pouya's objection to Mr. Herbert's authentication of the text messages themselves.

and offered "subject to penalty and perjury under the law." ECF 23-1, p. 3. Thus, his declaration substantially complies with Section 1746 and may be properly considered.

Turning, then, to Mr. Pouya's substantive arguments, the Court is not persuaded that the contacts at issue are too minimal to permit the exercise of personal jurisdiction consistent with due process. To be sure, the exchange of a few text messages or Mr. Pouya's temporary presence in Pennsylvania may seem minor if severed from their context—at least when compared to the formal negotiations or other business dealings present in more typical commercial contract cases. But in *this* case, those contacts were the critical ones.

After all, Mr. Herbert's claim is that Mr. Pouya's text messages, sent from Pennsylvania, are the very communications that formed an enforceable contract between the parties. Merits of that claim aside, it is clear that it "arises from or is related to" Mr. Pouya's purposeful presence in Pennsylvania. *Gen. Elec. Co.*, 270 F.3d at 150. Put another way, Mr. Herbert has presented competent evidence that, while Mr. Pouya was physically located (and, indeed, living) in Pennsylvania, he communicated with a Pennsylvania resident regarding payment for designs created in Pennsylvania. Further, Mr. Herbert's claims arise directly from an alleged breach of that agreement. Collectively, that is enough to subject Mr. Pouya to suit in Pennsylvania—even if he could, in theory, later prevail on the merits by showing that the communications were not definitive enough to form an enforceable contract.

For all these reasons, the Court concludes that it can exercise specific personal jurisdiction over Mr. Pouya in this case.[3]

---

[3] The Court also finds that the exercise of jurisdiction would not pose a substantial burden on Mr. Pouya, or otherwise offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). Where a defendant otherwise has sufficient minimum contacts with the forum state, only a "compelling case" of unreasonableness can defeat personal jurisdiction under this final prong. *Id.* at 477. Here, at most, Mr. Pouya suggests that it will be difficult

## II. Venue is proper in this District.

Mr. Pouya argues that venue is improper in this Court because (1) Mr. Pouya is a resident of Miami, Florida; (2) Mr. Herbert fails to allege facts that tie the negotiation, performance, or breach of the alleged contract to Pennsylvania; and (3) the Court lacks personal jurisdiction over Mr. Herbert. The Court disagrees.

Under 28 U.S.C. § 1391(b)(2), venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" In determining whether a substantial part of the events or omissions giving rise to a cause of action occurred in a particular jurisdiction, "[t]he test ... is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim." *Bockman*, 459 F. App'x 157 at 161 (cleaned up). Thus, "[i]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *N. Am. Commc'ns, Inc.*, 2018 WL 581069, at *3 (cleaned up).

Here, as discussed above, the Court finds that Mr. Herbert has now presented evidence that ties the entire negotiation and formation of the alleged text-message contract to Pennsylvania. Thus, given the nature of the claims asserted, the Court concludes that a "substantial part of the events … giving rise to [Mr. Herbert's] cause of action occurred" in Pennsylvania. 28 U.S.C. § 1391(b)(2). Venue is proper here.

## III. Mr. Herbert has pled plausible claims for breach of contract and unjust enrichment.

Next, the Court will also deny Mr. Pouya's Rule 12(b)(6) motion to dismiss Mr. Herbert's claims for breach of contract and unjust enrichment.

---

for him to litigate in Pennsylvania, since he lives in Florida. But the ordinary "inconvenience" of litigation "is insufficient to demonstrate that litigating in Pennsylvania would impose an unconstitutional hardship." *Gen. Nutrition Corp. v. Natrol, Inc.*, No. 11-1566, 2012 WL 1536972, at *6 (W.D. Pa. Apr. 30, 2012) (McVerry, J.) (citations omitted). Further, this case appears to be simple for purposes of discovery and trial, with minimal travel required.

### A. Breach of Contract

With respect to the contract claim, Mr. Pouya argues that Mr. Herbert has "failed to plead the existence and essential terms of a contract." Regarding the "existence" of a contract, Mr. Pouya asserts that the allegation that he agreed to give "thirty [to] fifty percent of proceeds" to Mr. Herbert is "not sufficient to support the existence of a contract." The Court disagrees.

To plead a claim for breach of contract, Mr. Herbert must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) (cleaned up). "[T]he elements of a valid and binding contract are: (1) the manifestation of an intent to be bound by the terms of the agreement; (2) sufficiently definite terms; and (3) an agreement supported by adequate consideration." *Giannone v. Giannone*, 429 F. Supp. 3d 34, 40 (E.D. Pa. 2019) (citations omitted). No formal writing is required. "Pleading an oral agreement can suffice to establish the existence of a contract." *Udodi*, 438 F. Supp. 3d at 299.

In his complaint, Mr. Herbert alleges that Mr. Pouya manifested an intent to be bound by agreeing, via text message, to pay Mr. Herbert "thirty to fifty percent of all proceeds" from sales of the merchandise designed by Mr. Herbert. ECF 1, ¶¶ 12, 24, 26. These terms are "sufficiently definite to be specifically enforced." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009). Indeed, Mr. Herbert's allegations sufficiently address the "who" (Mr. Herbert and Mr. Pouya), the "what" (payment in exchange for design of tour merchandise), the "when" (a percentage of proceeds after merchandise is sold on tour), and the "how much" (30-50%) related to his claim. These are the essential elements of the parties' agreement and exchange of valuable consideration.

Importantly, the fact that Mr. Herbert alleges Mr. Pouya agreed to a range of payment, rather than a specific amount, does not, in the Court's view, render the

contract unenforceable as a matter of law. A contract is too indefinite to enforce only "[w]here there is no agreement or even a discussion as to any of the essential terms of an alleged bargain, such as … price or consideration[.]" *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 590 (W.D. Pa. 2019) (Fischer, J.) (cleaned up). Conversely, "[a]n agreement is sufficiently definite" so long as "the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy." *RegScan, Inc. v. Con-Way Transp. Servs., Inc.*, 875 A.2d 332, 336–37 (Pa. Super. Ct. 2005) (citation omitted).

Here, based on Mr. Herbert's allegations, the range agreed to by the parties is a sufficiently certain basis to determine an appropriate remedy, as a reasonable fact-finder could conclude that there was mutual agreement that Mr. Herbert was entitled to at least 30% of all proceeds, even if other evidence fails to establish his entitlement to a greater award. *See Fleming Steel Co.,* 373 F. Supp. 3d at 590 ("[T]he omission of an essential term in a contract, such as price, does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite." (citations omitted)); *cf. In re HDD Rotary Sales, LLC*, 512 B.R. 877, 887 (Bankr. S.D. Tex. 2014) ("This demonstrates that Mr. Haub's oral promise to pay Mr. Miller a substantial bonus was a bargained for exchange. Accordingly, Mr. Haub's promise to pay Mr. Miller a bonus between $150,000.00 and $250,000.00 was supported by consideration."); 1 WILLISTON ON CONTRACTS § 4:25 (4th ed.) ("[W]hen the parties' language and conduct evidences an intent to contract, and there is some reasonable means for giving an appropriate remedy, the court will strain to implement their intent. Thus if a promise indefinite as to price is capable of being made certain by an objective standard through extrinsic facts, it will be enforced.").

Mr. Pouya also argues that Mr. Herbert's claims are deficient because he does not allege facts such as "the type of merchandise provided," "the specific tour for

which the merchandise was provided," "the cities in which Mr. Herbert provided the merchandise," "how 'proceeds' were defined or counted," or "how Mr. Pouya breached the alleged agreement." But the complaint *does* say "how Mr. Pouya breached the alleged agreement"—by failing to pay Mr. Herbert any proceeds he earned selling merchandise on his tour. ECF 1, ¶ 26. As for the other purported omissions, the Court does not view them as "essential elements" of a contract. Rather, they are details that, while potentially relevant to damages or other issues, are properly hashed out through discovery, rather than a motion to dismiss.

Finally, Mr. Pouya argues that Mr. Herbert's allegation that he is owed "$197,000 in damages" is "conclusory," and perhaps calculated incorrectly. But whether Mr. Herbert has used the appropriate measure of damages is, at this stage, immaterial. Instead, his burden for now is only to allege that he has suffered some "resultant damages," *Udodi*, 438 F. Supp. 3d at 299, not to prove what the exact amount of those damages is. The allegation that Mr. Pouya sold a substantial amount of merchandise designed by Mr. Herbert, and then paid him nothing in return, establishes, for pleading purposes, that Mr. Herbert sustained damages from the alleged breach.

In sum, Mr. Herbert's allegations plausibly establish a sufficiently definite agreement that Mr. Pouya would pay him at least 30% of the proceeds for all tour sales of the merchandise he designed. Further, Mr. Herbert has also alleged that Mr. Pouya breached this agreement by subsequently refusing to pay him any of the proceeds. That is a plausible claim for breach of contract. Of course, Mr. Pouya will have an opportunity to present evidence that rebuts Mr. Herbert's understanding of the parties' arrangement or calls into question the existence of any mutual understanding at all. But at the motion to dismiss stage, this is enough.

**B.     Unjust Enrichment**

Next, Mr. Pouya seeks dismissal of Mr. Herbert's unjust enrichment claim because (1) the existence of a written or express agreement (*i.e.,* the parties' text messages) precludes it; and (2) it is "impossible to determine" from the complaint what benefit Mr. Herbert conferred on Mr. Pouya or whether it was unjust. For the following reasons, the Court disagrees.

"In order to state a claim for unjust enrichment, a plaintiff must show that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Kenney v. Am. Bd. of Internal Med.*, 412 F. Supp. 3d 530, 551–52 (E.D. Pa. 2019) (citations omitted). "The polestar of the unjust enrichment inquiry is whether the defendant has been unjustly enriched; the intent of the parties is irrelevant." *Glob. Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008) (citation omitted).

Initially, it is true that Mr. Herbert's unjust enrichment claim could be precluded if he prevails on his breach of contract theory. But "[a] plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a question as to the validity of the contract in question." *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (cleaned up). Here, it is premature for the Court to conclude that there is no question as to the validity of the parties' alleged text-message contract. Indeed, it seems likely that Mr. Pouya *will* challenge its validity, and the circumstances surrounding the alleged agreement are sufficiently murky as to make such a challenge colorable. Accordingly, the Court will allow Mr. Herbert to plead an unjust enrichment theory in the alternative, at least until it becomes clear that the express contract's validity is not in doubt.

Further, Mr. Herbert has pled enough to plausibly show that he conferred a benefit on Mr. Pouya and that it was unjust for Mr. Pouya to retain that benefit without profit. That is, Mr. Herbert alleges that he performed significant merchandise design work for Mr. Pouya; that Mr. Pouya reaped hundreds of thousands of dollars in profit from selling Mr. Pouya's design work while sometimes passing it off as his own; and that Mr. Pouya led Mr. Herbert to believe he would receive a cut of the proceeds, but then ultimately paid him nothing. Accepting Mr. Herbert's allegations as true and drawing all reasonable inferences in his favor, this is enough to suggest that Mr. Pouya unjustly retained a benefit conferred on him by Mr. Herbert. Accordingly, Mr. Herbert has pled a plausible claim of unjust enrichment.

For all these reasons, the Court will deny Mr. Pouya's Rule 12(b)(6) motion to dismiss insofar as he seeks dismissal of Mr. Herbert's claims for breach of contract and unjust enrichment.

### IV. The Court will strike Mr. Herbert's demands for punitive damages, attorneys' fees, lost wages, and front pay.

Finally, Mr. Pouya argues that Mr. Herbert's demands for "punitive damages, attorney fees, lost wages, and front pay" should be stricken, because he is not entitled to that relief under Pennsylvania law. The Court agrees.

First, the Court will strike Mr. Herbert's demand for punitive damages, because, under Pennsylvania law, "punitive damages are not available in actions based solely on breach of contract[.]" *Carlson v. Amica Mut. Ins. Co.*, No. 17-4621, 2018 WL 10809978, at *3 (E.D. Pa. Mar. 12, 2018) (granting motion to strike demand for punitive damages on breach of contract claim). Likewise, "[u]njust enrichment … is a 'quasi-contract' remedy for which punitive damages are not available." *Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 680 (E.D. Pa. 2012) (citation omitted).

Second, the Court will strike Mr. Herbert's demands for "lost wages and front pay." These are employment-related damages, and there is no allegation that Mr. Pouya employed Mr. Herbert.

Third, the Court will also strike Mr. Herbert's demand for attorneys' fees, as there is no pled basis to recover attorneys' fees for the claims currently asserted in the case. *See, e.g., Villalta v. State Farm Mut. Ins. Co.*, No. 13-832, 2013 WL 12140441, at *1 (W.D. Pa. Sept. 27, 2013) (Hornak, C.J.) (striking demand for attorneys' fees on breach of contract claim where plaintiff "identified no statutory or contractual provision entitling her to attorney's fees for breach of contract[.]")[4]

## CONCLUSION

For all the reasons discussed above, the Court will deny Mr. Pouya's motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, but grant his motion to strike certain damages' requests.

An appropriate order follows.

DATE: May 3, 2021                                    BY THE COURT:

                                                     /s/ *J. Nicholas Ranjan*
                                                     United States District Judge

---

[4] Of course, this is without prejudice to Mr. Herbert's right to plead these damages if he amends his complaint at a later date to bring different or additional causes of action that provide for such relief.